FILED - GR
May 11, 2020 11:58 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ns Scanned: JB / 5/11/2020

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHGAN
SOUTHERN DIVISON

1:20-cv-405
Paul L. Maloney
United States District Judge

Clarence Otworth, in his individual capacity, and on behalf of all citizens of the State of Michigan similarly situated.

Plaintiff,

Case No. ________________

Governor Gretchen Whitmer,
In her official capacity.

JURY TRIAL DEMANDED

Defendant.

**COMPLAINT FOR DEPRIVATION OF RIGHTS SECURED BY THE U.S. CONSTITUTION**

COMES NOW Plaintiff, Clarence Otworth, Pro Se, (hereinafter referred to as "Otworth") in his individual capacity, and on behalf of all citizens of the State of Michigan similarly situated, and for his complaint for deprivation of rights secured by the U.S. Constitution, against Governor Gretchen Whitmer (hereinafter referred to as "Whitmer"), in her official capacity, he hereby alleges as follows:

1. Jurisdiction in this case is based on the Court's federal question jurisdiction, 28 U.S.C. Section 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States." The court has jurisdiction in this matter under 42 U.S. Code. § 1983 – Civil Action for deprivation of rights secured by the U.S. Constitution.

2. Plaintiff Clarence Otworth (hereinafter referred to as "Otworth") is a retired railroad conductor. He resides at 187 East Daniels Road, Twin Lake, MI 49457. Telephone: 231-292-1205.

3. Defendant Gretchen Whitmer (hereinafter referred to as "Whitmer") is the governor of Michigan. Her office address is: Michigan State Capitol, 110 South Capitol Avenue, P.O. Box 30013, Lansing, MI. 48933. Telephone: 517-373-3400.

4. On March 24, 2020 Whitmer issued a proclamation declaring, as of that date, a disaster existed within Michigan.

5. Whitmer issued the proclamation pursuant to the authority granted her under the Michigan Emergency Management Act (MEMA).

6. The MEMA states: "In the event of a disaster as defined in section 2, the government may by proclamation declare that a disaster exist."

7. Section 2 of the MEMA defines a disaster as follows: "Disaster" means an occurrence or threat of widespread or severe damage, injury, or loss of life or property resulting from a natural or human-made cause, including, but not limited to, fire, flood, snowstorm, ice storm, tornado, windstorm, wave action, oil spill, water contamination, utility failure, hazardous peacetime radiological incident, major transportation accident, hazardous materials incident, epidemic, air contamination, blight, drought, infestation, explosion, or hostile military action or paramilitary action, or similar occurrences resulting from terrorist activities, riots, or civil disorders.

8. Otworth is a citizen of Michigan and resident in Muskegon County.

9. Otworth in his individual capacity brings this cause on his own behalf and on behalf of all other citizens of the state of Michigan who are similarly situated.

1O. Otworth has never been diagnosed with the covid-19 virus.

11. Otworth has never been subjected to a quarantine investigation by the Muskegon County Board of Health.

12. Subsequent to a disaster proclamation, the MEMA confers specific enumerated powers upon the governor of the state of Michigan.

13. These specific powers were delegated to the office of governor by the legislature under the MEMA.

14 Among those enumerated powers are thirteen (13) emergency powers as provided in section 7 of the MEMA.

15. Section 7 of the MEMA expressly states: 'Upon such proclamation, the governor shall have and may exercise for a period not to exceed 30 days.

16. In relation to her execution of the March 24 Executive Order, Whitmer restricted citizen's movement to leave their homes and restricted the activities they might engage in within the entire State of Michigan, and further mandated all non-essential business to close.

17. Whitmer must have constitutional or statutory authority to issue such an executive order which invokes the police powers of the state.

18. Whitmer is the leader of the executive branch of government and as such can only wield police power granted her under the Michigan Constitution, or those expressly delegated her by the legislature.

19. In both March 24 and April 09 Executive Orders, Whitmer declares her authority to enter such orders derived from two sources.

20. The two sources listed by Whitmer are the Michigan Constitution and MEMA.

21. Whitmer further alleged her executive orders were consistent with public health laws.

22. Otworth is a citizen and resident of Michigan and as such he, and all persons similarly situated have a right to demand the executive orders issued by Whitmer are authorized by law whether it be the Michigan Constitution or the MEMA.

23. Pursuant to the MEMA, Whitmer issued the March 24 Proclamation wherein she determined the COVID-19 pandemic to be a disaster.

24. As a result of the March 24 Proclamation, Whitmer issued the March 24 Executive Order wherein she, *inter alia,* ordered that given the powers of section 7 of the MEMA, Constitution, to order Otworth, and all citizens similarly situated, to have their freedom of movement to leave their homes restricted and further restricting the activities they might engage within the entire State of Michigan.

25. As Governor, Whitmer certainly has the supreme executive power, and shall be responsible for the faithful execution of the laws.

26. However, the exercise of the police power is generally a matter resting in the sound discretion of the Legislature.

27. What laws or regulations are necessary to protect public health and secure public health and secure public comfort is a legislative question, not an executive one.

28. Nowhere in the Michigan Constitution can it be found the police power to protect public health lies with the executive branch.

29. The Legislature may, in the exercise of the police power of the state, create ministerial boards, with power to prescribe rules and impose penalties for their violation.

30. The Legislature, and not the Office of Governor, has the authority to exercise its police powers by general law, and to confer upon boards and other agencies authority and discretion to execute these laws.

31. Given the gravity of the impact of isolation and quarantine, and closure of businesses, the Legislature expressly granted this extraordinary police power to the board of the Michigan Department of Health (hereinafter referred to as 'the Board") and not to any one individual holding the position of the Office of Governor.

32. This grant of legislative authority was delegated to the Board.

33. The Board has general supervision of the interests of the health and lives of the people of this State.

34. This extraordinary power of the Board has been delegated from the state level to local board of health in each of Michigan's 83 counties.

35. The Board has promulgated administrative rules specifically addressing the court orders required and the procedures required for isolation, quarantine and closure.

36. Even if Whitmer takes the position that she can usurp the authority vested in the State Board of Health, a seriously egregious proposition for certain, it would give Whitmer no authority to completely ignore the constitutional procedural due process protections which are required by the U.S. Constitution and Michigan's Constitution and further mandated by the legislation in the Michigan Department of Public Health.

37. As such, Whitmer, under the color of authority of the MEMA and the Michigan Constitution, entered an order against Otworth, as well as every other citizen of the State of Michigan, restricting their freedom of movement to leave their homes and further restricted the activities they might engage in within the entire United States of America.

38. Otworth by definition within The Plan of MDPH, such actions of Whitmer constituted a quarantine.

39. Otworth's interests, as well as the interests of every other similarly situated citizen of this state, interests are in opposition to Whitmer's in that Otworth, as well as every other similarly situated citizen of this state, has a right to insist Whitmer not issue executive orders regarding matters which the legislature exclusively granted the MDPH supreme authority.

40. An actual controversy exist between the parties in regard to the authority of Whitmer to issue and enforce her order mandating every citizen of the state comply with Section 1 of the March 24 Executive order.

41. An immediate and definitive determination is necessary to clarify the rights and interest of the parties.

42. As to Section 1 of the March 24 Executive Order, or any subsequent order issued by Whitmer with substantively the same provision as Section 1 of the March 24 Executive Order, Whitmer must act within any statutory authority granted her in MEMA.

43. Otworth is a citizen of Michigan and as such he, and all persons similarly situated, have a right to demand that any executive orders issued by Whitmer pursuant to a declaration of a disaster are within the confines of the emergency authority granted Whitmer by the legislature pursuant to section 7 of the MEMA

44. Pursuant to the MEMA, Whitmer issued the March 24 Proclamation wherein she determined the COVUID-19 pandemic to be a disaster.

45. Whitmer issued the March 24 Proclamation declaring a pandemic for 30-days.

46. There is no provision in the MEMA which requires a time frame be arbitrarily placed on the duration of a disaster proclamation.

47. Placing a short-lived 30-day disaster proclamation in response to a novel worldwide pandemic serves no legitimate public purpose other than to create a fiction of time wherein assuredly a continuing disaster proclamation will be required solely for the benefit of the executive branch to retain emergency powers.

48. As a result of the March 24 proclamation, Whittmer issued the March 24 Executive Order wherein she, *inter alia*, ordered Otworth, as well as every other citizen of the State of Michigan, be restricted in their

freedom of movement to leave their homes and further restricted the activities they might engage within the entire United States of America.



49. Assuming arguendo, Section 1 of the March 24 Executive Order doesn't suffer other fatal defects raised herein in a separate count, the MEMA is unambiguous in that it limits Whitmer's authority to utilize the emergency order provision of section 7 of the MEMA for a period of time not to exceed 30-days from the date of the declaration of said disaster.

50. Given the proclamation of the COVID-19 disaster was March 24, 2020, the March 24 executive order was as a matter of law required to lapse on or before April 13, 2020.

51. On April 09, 2020 Whitmer issues the April 09 Proclamation, wherein she declares COVID-19 to be a "continuing disaster."

52. There is no provision in the MEMA which recognizes a continuing disaster.

53. The continuing disaster was unequivocally the exact same disaster which was declared on March 24, 2020.

54. The only reason Whitmer was required to issue a subsequent proclamation for the continuing COVID-19 disaster was Whitmer placed an arbitrary 30-day time frame on the originating disaster proclamation.

55. On that same day of April 09, 2020, Whitmer issued the April 09 Executive Order, and ordered, *inter alia,* a continuance of her March 24 Executive Order until April 30, 2020.

56. As such, Whitmer, under the color of authority granted her by the MEMA, is utilizing the emergency powers for more than 30 days from the declaration of disaster resulting from the COVID-19 virus which was pronounced on March 24, 2020.

57. Absent the arbitrary, and statutorily unnecessary, 30-day deadline having been placed in the originating proclamation, there would be no need for Whitmer to issue any such continuing proclamation.

58. It is readily apparent Whitmer is arbitrarily issuing serial proclamations acknowledging the same COVID-19 virus as a "continuing disaster," wherein she can reenergize the emergency provisions of the

MEMA for the sole purpose of rendering the statutory 30-day limitation placed on her emergency powers meaningless.



59. Otworth's interests, and the interests of all citizens similarly situated, interests are in opposition to Whitmer's in that they all insist Whitmer can only issue emergency executive orders within the confines of her express authority delegated to her by the legislature under the MEMA.

60. An actual controversy exists between the parties in regard to the authority of Whitmer to issue and enforce emergency orders under the MEMA for more than 30 days as a result of one occurrence of a disaster being the COVID-19 pandemic which began March 24, 2020.

61. Whitmer entered her March 24, 2020 Executive Order wherein she ordered all citizens to stay at home or at their place of residence, except as she arbitrarily deemed necessary activities.

62. The Fourteenth Amendment to the United States Constitution and Article 1, Section 2, of the Michigan Constitution protects individuals from the deprivation of life, liberty, or property without due process of law, U.S. Const., Amen. XIV; MI Const. 1964, art. 1, § 2.

63. The right to move from one place to another according to one's inclination is an attribute of personal liberty protected by the Constitution.

64. The right to travel is a part of the liberty of which the citizens cannot be deprived without due process.

65. As to procedural due process, the government is only allowed to deprive a citizen of "life, liberty, or property" in accordance with certain procedural protections.

66. Under substantive due process, the appropriate inquiry is whether the individual has been subjected to the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.

67. Judicial review of strict scrutiny is appropriate when an infringement of a fundamental right secured by the Constitution is being exercised.

68. As for procedural due process, the Michigan Department of Public Health Act. The Plan, and Administrative rules are replete with constitutional procedural due process protections for when it may

become necessary for the State of Michigan to restrict the freedom of movement of its citizens to leave their homes.



69. MDPH has delegated the power of isolation, quarantine and closure to local health departments and local health departments are obligated under law to follow the procedural due process requirements provided in the enabling statute and their administrative rules.

70. Those procedures even included the right to counsel.

71. Notwithstanding these safeguards, Whitmer has perverted the emergency provisions of the MEMA in an effort to strip the sacred responsibility of the health and lives of the people away from where the legislature placed it, being local control of county health departments of the MDPH, and in doing so she took complete control of the free movement of every citizen within the State of Michigan which for all intents and purposes has created a police state.

72. Even if well intentioned by Whitmer, her actions as governor have left every citizen of this state completely devoid of any procedural due process rights to protect their liberty afforded them by the United States Constitution, and Michigan Constitution, and further guaranteed them by the legislature under MDPH's own administrative rules.

73. Strict Scrutiny requires a compelling governmental interest and must have a narrowly tailored legal solution achieve that interest.

74. Saving lives is certainly a compelling government interest.

75. The Plaintiff proffers to the Court that the Michigan Department of Public Health Act, The Plan, and Administrative Rules are narrowly tailored to achieve the compelling government interest of saving lives.

76. .However, Section 1 of Whitmer's March 24 Executive Order was anything but narrowly tailored.

77 Section 1 of Whitmer's March 24 Executive Order applies to all people in the state no matter their circumstances.

78. Most likely it is a plagiarized copy of an executive order issued by another Democratic Governor that wants our economy to continue languishing so President Trump can be defeated in November.

79. The Plan as promulgated by the MDPH has the following standards regarding quarantine:

a) Quarantine is not effective in controlling multiple influenza outbreaks in large immunologically naïve populations, because the disease spreads too rapidly to identify and control chains of transmission.

b) Quarantine will damage the workforce.

80. The Administrative Rules have the following standards before a quarantine can occur for any persons:

a) Have reason to believe that a person is suspected to be, infected with, exposed to, or contaminated with a dangerous contagious or infectious disease that could spread to or contaminate others if remedial action is not taken.

b) The person would pose a serious and imminent risk to the health and safety of others if not detained for isolation.'

c) The quarantine shall not be for a period of time not to exceed the period of incubation and communicability, as determined by the Department or certified local health department, for the dangerously contagious disease.

81. A person cannot be quarantined on the mere suspicion that he or she may have a contagious disease.\Whitmer's overbroad executive order is not even remotely narrowly tailored as defined in the plan and administrative guidelines, as well, as legal standards set by precedent.

82. The March 24 Executive Order is as broad as an ocean in attempting to achieve the compelling government interest of saving citizens from the COVID-19 virus,

83. The question before the Court is not solely whether the mass quarantine will save lives but is it narrowly tailored to achieve that goal?

84. The Court need only look to the Michigan Department of Public Health for which Whitmer overseas, very own plans and rules to make that overbroad determination.

85. Section 1 of the March 24 Executive Order, and any subsequent order issued with substantively the same provisions, is arbitrary and capricious standing in dark contrast to the very plans and rules of the administrative agency charged with the duty to protect the people of this state.



86. Otworth, and all citizens similarly situated, are being irreparably harmed each and every day they continue to be restricted to their home, and limited in their activities, except to do those things Whitmer has unilaterally authorized them they could do.

87. Whitmer had no constitutional or statutory authority to enter Section 1 of the March 24 Executive Order or to enter any subsequent order issued with substantively the same restrictions.

88. Whitmer exceeded her authority under MEMA in entering Section 1 of the March 24 Executive Order.

89. Whitme has violated Otworth, and all citizens similarly situated, procedural due process rights when she entered Section 1 of the March 24 Executive Order, or in entering any subsequent order issued with substantively the same restrictions.

WHEREFORE, Plaintiff, Clarence Otworth, prays that this Court enter judgment in his favor and award him five hundred thousand dollars ($500,000.00) for Whitmer's deprivation of his rights secured by the United States Constitution, and for such other relief as this Court deems just and proper.

Respectfully submitted,

Clarence Otworth
187 East Daniels Road
Twin Lake, Michigan 49457
231-292-1205










THE CLERK

S DISTRICT COURT

UILDING

STREET, N. W.

MI 49503-2363

Clarence Otworth
187 E Daniels Rd
Twin Lake, MI 49457
Secret Service Killed JFK

OFFICE OF
UNITED STATE
399 FEDERAL B
110 MICHIGAN
GRAND RAPIDS,